**SO ORDERED.**

**SIGNED December 19, 2008.**



_____
**HENLEY A. HUNTER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

IN RE:                                          CASE NO: 04-31432
     **GREGORY NEAL DORSEY**
     **GWENDOLYN DORSEY**
       **(Debtors)**

**FRIENDLY FINANCE SERVICE—EASTGATE, INC.**
       **(Plaintiff)**

**VERSUS**                                      **ADVERSARY NO.  06-3045**

**GREGORY NEAL DORSEY**
**GWENDOLYN DORSEY**
       **(Defendants)**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

      This is a proceeding to disqualify the undersigned under 28 U.S.C. §455. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (J). Jurisdiction is proper per 28 U.S.C.§1334 and by reference from the district court. No party has moved to withdraw the reference nor has the district court done so on its own motion. Pursuant to these reasons, the motion is Denied.

### Factual History

      This matter comes before this Court on the remand from the District Court for reconsideration of the Motion to Disqualify by Friendly Finance Service—Eastgate, Inc. (hereinafter

"Friendly") in a manner consistent with its ruling entered October 29, 2008, which this Court denied as untimely filed and even if timely, denied on the merits. The District Court described the case history as follows:

> In May 2003 debtors Gregory and Gwendolyn Dorsey (collectively referred to as the "Dorseys") borrowed $3,000.00 from Friendly Finance.
>
> On June 18, 2004, the Dorseys filed a Chapter 13 bankruptcy petition, which was later converted to a Chapter 7 proceeding.
>
> On May 18, 2006, Friendly Finance filed an adversary complaint, objecting to the discharge of the debt under 11 U.S.C. §§ 523 and 727.
>
> In a December 7, 2006 ruling from the bench, Judge Hunter rejected Friendly Finance's objections to discharge. In addition, Judge Hunter enjoined Friendly Finance from filing any complaints objecting to discharge or dischargeability in the Monroe and Alexandria Divisions of the Western District of Louisiana without prior leave of court.
>
> On February 22, 2007, this Court affirmed Judge Hunter's decision. *See Friendly Finance Service-Eastgate, Inc., v. Dorsey,* 2007 WL 628176 (W.D. La. Feb. 22, 2007).
>
> On October 23, 2007, the United States Court of Appeals for the Fifth Circuit affirmed in part, vacated in part, and remanded for further proceedings. *See In the Matter of: Dorsey,* 505 F.3d 395 (5th Cir. 2007). The Fifth Circuit affirmed the dismissal of Friendly Finance's §523 objection, but reversed the dismissal of the §727 objection and remanded it for further consideration. *Id.* at 399-400. The Fifth Circuit also vacated the injunction and remanded to the bankruptcy court "for reconsideration of the propriety of [the] injunction in light of this opinion." *Id.* At 400-401.
>
> On February 26, 2008, on remand to the bankruptcy court, Friendly Finance filed a motion to disqualify Judge Hunter for lack of impartiality and personal bias against Friendly Finance, its sister corporations, its parent corporation, and its president, John G. Loftin ("Loftin").
>
> On March 5, 2008, Judge Hunter orally ruled on the motion to disqualify and Friendly Finance's §727 objection, denying both. Judge Hunter also affirmed the prior injunction.

(Ruling, Doc. 6, Civil Action Nos. 08-0852 and 08-0853.)

The district court granted the denial of the motion to disqualify in part, but ruled that this Court committed error by not permitting Friendly to proffer evidence at the March 5, 2008 hearing, and it instructed the court to allow Friendly to proffer evidence in support of its motion to disqualify. This Court is not unmindful of the district court's suggestion, in a footnote, that if I recused myself

on remand, the orders entered on the §727 objection and injunction should be vacated and the matter referred to another judge to consider the §727 objection. However, having conducted a full evidentiary hearing on remand, this Court concludes that, based solely on a review of the law and evidence presented, a recusal in this matter is not warranted.

At the outset, this Court must point out that the initial ruling that the Motion to Disqualify was not timely filed vís a vís the grounds for recusal set forth in the original motion, was not reversed on appeal, that finding has not changed, and this Court reiterates the Motion to Disqualify was not timely filed. *See U.S. v. York,* 888 F. 2d 1050 (5th Cir. 1989)*; In re Evergreen Security*, 363 B.R. 267 (Bankr.M.D.Fla. 2/27/2007); *In re Clark*, 289 B.R. 193 (Bankr.M.D.Fla. 10/15/2002).

In further reconsidering the issue of recusal as directed, these reasons must begin by revisiting the complaint itself, filed May 5, 2006, alleging that debtors improperly disposed of Friendly's collateral, because the following review not only reminds the reader why the original, very limited, sanction was imposed against the moving party in the first place, but also clarifies that the sanction was warranted by the conduct of this litigant and in no way established grounds for recusal in this matter.

**The Motorcycle**

The original complaint alleges that debtors made a loan with Friendly secured by "several movables" as collateral; but they testified at the §341 meeting that they did not own "the shotguns" when the loans were made, thus obtaining the loan by fraud and false pretenses. (Doc. #1.) The complaint also alleged that debtors failed to turn over a tax refund to the Chapter 13 Trustee, instead spending the funds on clothing, car repairs and other bills, and failed to show that any tax refund was due in their schedules. Debtors' answer admits the ownership of the collateral and agrees to

3

surrender the same to the plaintiff. (Doc. # 9.)  Although the complaint dealt with the failure of the debtors to comply with the tax refund provisions of the plan, prior to the conversion of the case to Chapter 7, debtors had filed a modification to the Chapter 13 Plan reading as follows: "The collateral for Friendly Finance is a motorcycle, not movables as shown in the plan. Debtors shall surrender the motorcycle in full satisfaction of the debt."  (Modification filed October 28, 2005, Case No. 04-31432, Doc. #17.)

A Joint Pretrial Statement was filed referring to shotguns and "several movables" as the collateral for the loan. One of the contested issues of fact was whether or not the debtors owned the shotguns.  (Doc. # 10.)  The exhibits listed include the proofs of claim filed by Friendly.  A review of the claims register reflects that Friendly Finance Service Eastgate, Inc., filed two proofs of claim. Claim 1-1 is filed for the sums of $3,694.95 Principal, $798.02 interest, and $200.00 court costs for a total claim of $4692.97.  The security is listed as a 1997 Yamaha MC, 3 guns, TV, VCR, Riding Mower 36" Cut.  Claim 6-1 appears to be a duplicate of Claim 1-1.  There is no explanation of the $200.00 in "court costs," and the claim does not indicate that a judgment was obtained prior to bankruptcy.  Trial was scheduled for December 27, 2006.  Counsel for the Plaintiff filed a pre-trial memorandum indicating that the collateral for the loan was "various movables" and referring to the ownership of the shotguns as a fact question. (Doc. #13.)

However, on November 27, 2006, about one month prior to trial, counsel to the plaintiff wrote a letter to this office to the attention of the law clerk, with copies to Mr. Young, debtor's counsel, and Mr. Loftin, the principal in Friendly Finance and its affiliates, reading as follows:

"The case is resolved, but not on the basis of the merits. When I asked about the motorcycle that was given as collateral, I discovered that no effort had been made to recover it. This line of inquiry led to discussions between Orum Young and me and a decision to reaffirm a portion of the

4

debt.

I will be filing a motion to dismiss the adversary proceeding."
(Copy attached, emphasis supplied.)

To which the Court's first reaction was, having reviewed the pleadings in the adversary proceeding in preparation for trial—"What motorcycle?" This was the first mention in the context of the adversary proceeding about a motorcycle. No reaffirmation agreement was submitted and the matter went to trial as scheduled. Testifying on behalf of the plaintiff was Mr. Fred H. Coody, the Branch Manager for Friendly. Mr. Coody testified that the motorcycle, the firearms, and the shotguns were the major items. (Tr., p. 7, lines 6-7.) He also testified he had seen the motorcycle a number of times when debtor came to the office to pay his bill, and expressed his opinion that although the motorcycle had deteriorated or depreciated to an approximate value of $2,700.00 from the time debtor purchased it in 2001 for $2,600.00, Friendly nonetheless advanced $3,000.00. (Tr., p. 7-10.) There was further testimony about the shotguns from both Mr. Coody and the debtor, who affirmatively testified that he converted the case to a Chapter 7 before he filed his tax return expecting a refund. (Order of Conversion, January 20, 2006, Doc. #22).

Following the trial, this Court rendered oral reasons, concluding that the plaintiff had overlooked an extremely important matter, an express modification to the Chapter 13 plan, stating that the collateral for Friendly's loan was a motorcycle, not the movables shown in the plan (and for that matter in the complaint, pre-trial Statement, pre-trial memorandum.) Thus, under §1309, the plaintiff no longer held a debt, and lacked standing. (Tr., p.38.) At the trial, we noted that apparently counsel to the plaintiff failed to consider the modification to the plan in the filing and preparation of the complaint, and observed that this failure might fall within the purview of sanctionable conduct under Federal Rule of Bankruptcy Procedure 9011. (*Id.*, at p.39, lines 18-21; p. 40, lines 4-9.) This

5

Court further made conclusions of fact and law regarding the facts, should the plaintiff be held on appeal to have standing, rejecting the demands as to the shotguns, and also as to the debtors' alleged failure to turn over tax refunds to the Chapter 13 Trustee.

The District Court affirmed, but without expressly addressing the standing issue. The Fifth Circuit, however, attached great significance to the motorcycle and the standing issue. *In re Matter of Dorsey*, 505 F.3d 395 (5th Cir. 2007). It expressly held that it "would be inequitable, however, to bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his rights to convert from Chapter 13 to Chapter 7. *In re Shaffer,* 48 B.R. 952, 955-58 (Bankr.N.D. Ohio 1985).

The Fifth Circuit then noted that the debtor's testimony at the §341 meeting in the converted Chapter 7 case, held on January 20, 2006, indicated he still had the motorcycle. Thus, the court determined that the debtor failed to fulfill his obligation to surrender the motorcycle to Friendly, and abandoned the plan when he converted, still listing a debt to Friendly in his schedules in the converted case.

There is something amiss here. Mr. Rountree's letter to the Court approximately one month prior to the trial reports he "determined no effort had been made to recover it," the implication being that *Friendly had not made any effort to recover the collateral*, notwithstanding the debtor's stated intention in the modification to the plan and in answer to the complaint to surrender Friendly's collateral to it. What exactly happened to the motorcycle?

The mystery went unsolved until March 5, 2008, the date of the hearing on the Motion to Disqualify, when Mr. Orum Young, Counsel to the Debtors, fortuitously made an observation which resulted in the following colloquy:

6

MR. YOUNG: For the record, Your Honor, the Dorseys indicate–and I believe the representative of Friendly Finance may verify–that they have indeed surrendered the motorcycle.

THE COURT: All right.

Is that correct Mr. Rountree, that the debtors in the Dorsey case have surrendered the motorcycle?

MR. ROUNTREE: Well, Mr. Coody says–

MR. LOFTIN: Your Honor, Mr. Coody, our manager, says that he has.

MR. ROUNTREE: Yes.

MR. LOFTIN: I didn't know.

(Tr., March 5, 2008, p. 43.)

One might reasonably ask, when did the surrender take place? Why did Mr. Loftin not know? Mr. Loftin is himself an attorney, in addition to being the principal in Friendly Finance and its affiliates, and is well aware of an attorney's duty of candor toward a tribunal. The Fifth Circuit focused on the equities in this situation. Just a month prior to the trial, Mr. Rountree reported to the Court that the focus was on the motorcycle as collateral, that the debt would be reaffirmed, and the action dismissed. Instead, even though the complaint alleged nothing about a motorcycle, but rather focused on guns and movables, the trial proceeded, and the various appeals followed. Mr. Rountree returns to the standing issue in his Brief on Disqualification, filed after the March 5, 2008 hearing, by again addressing the standing issue, concluding: "Friendly Finance did have standing to object to the discharge of the debtors, and this would not have gone unnoticed by the court had its attitude toward this creditor not affected its ruling." (Doc. #80, p. 2.)

It was this Court who *sua sponte* raised the standing issue by reviewing the pleadings and the orders in the related bankruptcy case. It is regrettable that this Court did not pursue the recovery issue further, at the trial on the merits, and even more regrettable that Friendly itself permitted the

7

matter to go this far without reporting the surrender to the Court. We are grateful to Mr. Young for the information. This Court suggests, however, that not only should Mr. Loftin have known this, but also that Mr. Rountree should have investigated whether or not the motorcycle had in fact been surrendered and when.

Further, although the complaint was not dismissed, an effort to reaffirm did take place, although the agreement was not filed with the Court. 11 U.S.C. §524 imposes certain requirements on reaffirmation agreements, in that they are required to be a voluntary agreement.[1] Debtor testified that he paid $100.00 to Friendly on November 14, 2006, the month prior to the trial, pursuant to an agreement where the parties settled for $3,000.00. Debtor, accordingly, wondered why they were coming to court, and that he went to Friendly's office without speaking to his own attorney, or plaintiff's counsel of record, but he spoke to a representative of Friendly.[2] The Court then recalled Mr. Coody who confirmed that an out of court settlement or reaffirmation agreement had been confected, which debtor agreed to "re-sign." Although Coody told debtor: "'Gregory . . . I can't actually talk to you about this, but,' I said, 'if you want to pay the payment, we will give you a receipt for it.' And my secretary took his hundred dollars and wrote him a receipt." (Tr., p. 33.)

The primary difficulty with a reaffirmation in this case is that approving the same (had it been filed with the Court) would have involved Friendly settling an adversary proceeding combining both an objection to the discharge with a complaint to the dischargeability of a particular debt. We

---

[1]This case was filed prior to the effective date of BAPCPA, which imposed even more stringent requirements on such agreements, and imposed greater duties of review on the bankruptcy courts.

[2]Debtor appeared to be confused about whom he dealt with, first suggesting it was Mr. Loftin, then a Mr. Powell, but then settling on Mr. Coody, the Branch Manager, who testified at the trial, but then returning to Mr. Powell, who went to school with one of his bosses.

8

will return to this issue after reviewing Mr. Loftin's testimony, but it should first be noted that this is not the first questionable reaffirmation agreement involving Friendly. In the *Matter of Veria Jean Tucker*, (Case No. 97-32267) 224 F.3d 766 (5th Cir 2000), Friendly insisted on a debtor signing a reaffirmation against her wishes, which contained language that it was of "no legal effect." Mr. Loftin's disingenuous explanation for that agreement was that since a debtor could make a voluntary payment on a discharged obligation, he needed to know when the payment would be made. Sanctions were imposed and the decision was affirmed on appeal.

This review of the Adversary Proceeding *ab initio* demonstrates that, had the facts been fully investigated, not only should this complaint never have been filed, but the entire series of appeals and remands, and an untimely motion to recuse, could have been avoided, and Mr. and Mrs. Dorsey need not have waited over four and one-half years for their discharge and case-closing. The filing of the complaint, the pre-trial stipulation, and memorandum, all of which were silent as to the motorcycle, up to events that were not reported to this tribunal until March 5, 2008, collectively bring to mind the following proverb:

> For want of a nail the shoe was lost.
> For want of a shoe the horse was lost.
> For want of a horse the rider was lost.
> For want of a rider the battle was lost.
> For want of a battle the kingdom was lost.
> And all for the want of a horseshoe nail.

So goes the ancient proverb, which, is it said, "describes a situation where permitting some small undesirable situation will allow gradual and inexorable worsening." See Wikipedia (http://en.wikipedia.org/wiki/For_Want_of_a_Nail_%28Proverb%29)

So, it is for want of a nail, or the failure of counsel for the plaintiff and plaintiff itself to investigate the facts and to accurately report the same to the Court, that ultimately led to this complete imbroglio. It was this documented failure of counsel and client to adequately represent the facts of their case within the bankruptcy court, and not any imagined predisposition of the Court

9

against Friendly that led to its ultimate sanction, which was minimal at best—merely that this litigant seek leave of court with adequate proof of compliance with basic procedural rules and investigate the potential basis for further proceeding prior to engaging debtors and the Court in the adversary process, having demonstrated abuse of the process in the past and in this case.

## Recusal Revisited

This Court denied the Motion to Recuse as untimely and denied the movant a full evidentiary hearing based on its understanding that the movant was not entitled to same under prevailing jurisprudence. *In re Lieb*, 112 B.R. 830 (Bankr.W.D.Tx. 1990); *See Levitt v. University of Tex.*, 847 F.2d 221 (5th Cir.),*cert. denied*, 488 U.S. 984, 109 S.Ct. 536 (1988); *See also In re Lietke*, 510 U.S. 540, 114 S.Ct. 1147 (1994) ("Impartiality is not gullibility."); *Easley v. The University of Michigan Board of Regents*, 853 F. 2d 1351 (6th Cir. 1988); *Gil Enterprises, Inc. v. Delvy*, 79 F.3d 241(2nd Cir 3/12/1996); *In re Evergreen Security*, 363 B.R. 267 (Bankr.M.D.Fla. 2/27/2007); *In re Clark*, 289 B.R. 193 (Bankr.M.D.Fla. 10/15/2002). This Court further reasoned under cited case law that the motion was to be decided on the basis of the affidavits, if any, attached to the motion.[3] *Id.* The only attachment was the affidavit of Mr. James Rountree, reciting that he "was present at the pre-trial conference, and was discouraged from representing plaintiff and its associates" and "believes that this Judge is biased and prejudiced against plaintiff and its associates." (Affidavit of James A. Rountree, Attachment to Doc. # 41.) The only other documents submitted in connection with the recusal issue were a series of depositions of Mr. Young, Mr. Loftin, and Mr. McMillin, which were

---

[3]Mr. Rountree repeatedly stated at the hearing that whether or not to hold a hearing was within the Court's discretion. He had no citation to support his request to elicit testimony in support of the motion. Tr., Hearing on Motion to Disqualify, p. 4, lines 17, - p.5, line 5; p. 7, lines 11-14.

10

not taken until March 7, 2008, and were attached to a Motion for Reconsideration filed March 13, 2008. (Doc. #49) Reconsideration was denied on March 20, 2008, as the relief sought therein was also unclear. (Doc. #52.) The motion to disqualify is filed in the adversary proceeding and bankruptcy case, but seeks disqualification from "this case" at paragraph (3), but refers to disqualification in "this matter" and "other matters involving Loftin and Friendly Finance Discount Corporation and its subsidiaries" in the prayer.[4] At the hearing on the Motion to Disqualify, Mr. Rountree was questioned as follows:

> THE COURT: This is the motion to disqualify filed by Mr. Rountree on behalf of Friendly Finance in the Dorsey matter.
>
> I believe, perhaps, the motion, although the bankruptcy case is on the calendar–I'm not certain, Mr.. Dorsey, I mean, Mr. Rountree, are you moving for disqualification in both, or in just the adversary proceeding?
>
> MR. ROUNTREE: Your Honor, I'm asking the Court to, to disqualify itself disqualify itself from this case and I–I–the adversary proceeding, I suppose, Your Honor. Because the–
>
> THE COURT: In just the adversary?
>
> MR. ROUNTREE: I think so.
>
> THE COURT: All right. So–
>
> MR. ROUNTREE: I hadn't really thought about that."

(Tr. p. 3, lines 2-16.)

At no time does Mr. Rountree refer to the prayer in the motion to disqualify the Court from

---

[4]Bankruptcy cases are distinct from any related adversary proceedings, and different rules may apply. The Federal Rules of Bankruptcy Procedure largely apply to bankruptcy cases, except for Rules 7001, which make applicable various provisions of the Federal Rules of Civil Procedure to adversary proceedings in bankruptcy.

all matters concerning Friendly and its affiliates. From Mr. Rountree's remarks, it appears that the motion was filed with little forethought and even less preparation for the hearing.

On remand, with the instructions to allow a proffer, this Court conducted an evidentiary hearing in an abundance of caution. Turning, henceforth, to the evidence adduced, we begin with the testimony of Mr. Loftin.

### Mr. Loftin, the Lotus Club, and "Bottom feeders in Bankruptcy"

Mr. John Griffin Loftin testified that he is the president of Friendly Finance Discount Corporation and also an attorney. His work as an attorney is confined with the family's businesses, although he has not signed any adversary proceeding complaints in proceedings before me for two or three years. He feels that I have a personal animosity toward him since he insists on filing pleadings seeking combined relief under §523 and §727. Returning briefly to that point, this Court has a concern on that issue with all creditors, since "[d]enial of discharge is reserved for the truly pernicious debtor. Only where there is a preconceived scheme to thwart the rights of creditors and the process of this court, or such a cavalier disregard of duty as to constitute the legal equivalent of those motives, is the discharge withheld." *In re Brame,* 23 B.R. 196, 200 (Bankr. W.D. Ky. 1982). The Court realizes there are debtors whose conduct toward creditors in the context of the bankruptcy system is worthy of scrutiny, but only at the prompting of a well-pled complaint filed in good faith by counsel to the creditor, and one that comports with the Federal Rules of Civil Procedure. This Court sought to deal with the issue in a standing order, from which an appeal was filed by a party other than Friendly Finance. The order was vacated on appeal, and this Court was instructed to deal with the matter on a case by case basis. *See In re Standing Order with Reasons Regarding Objections to the Discharge under 11 U.S.C. §727 and Purported Settlements of Actions, Ford*

12

*Motor Credit Company v. Johnson*, 272 B.R. 917 (W.D.LA. 2001). The Court's concerns in this matter are summarized by Mr. Rountree in his brief to the Fifth Circuit on Appeal, where, after discussing the holding in Johnson, and observing this was a tactical error on his part, that:

> "There is a good reason for Judge Hunter's antipathy for the combination of objections to discharge and dischargeabiltiy. One of the fundamental purposes of bankruptcy is the equal distribution of assets of the debtor, and there is a potential for a creditor to extort a particular advantage by dismissing the objection to discharge and settling the dischargeabilty complaint"

(Friendly Finance Brief on Appeal, 2007 WL 5044060 (5th Cir., p. 8, fn.3.))

Mr. Loftin testified that he had been cautioned against filing adversary complaints by counsel, due to the effect such actions might have on his law license. Mr. David McMillin acknowledged to the Court in the past that he signed complaints prepared by Mr. Loftin without revising same and without conducting any independent investigation of the allegations, merely passing on Mr. Loftin's complaints. Mr. Loftin also objected to the Court's alleged predisposition against summary judgments, without reference to any factual scenario, and to the Court's preference that default judgments not be entered until the preliminary pre-trial conference had been conducted.[5] When an adversary proceeding is filed, unless a request is made to waive a pre-trial conference and fix the matter for an immediate trial, a preliminary pre-trial conference is fixed. The order attendance of counsel for the plaintiff and for the defendant at the conference and the filing of a joint, preliminary pre-trial statement. These conferences are fixed within a matter of weeks of the filing of a complaint. In some bankruptcy courts, attorneys who represent debtors in their bankruptcy cases are required to represent those debtors in related adversary proceedings. That is

---

[5]Mr. Loftin also commented on this issue in his deposition, Mr. Loftin at page 4, line 18, notes that this Court has questioned his filing motions for default judgments, which are allowed in the Civil Procedure rules, which he suggests I don't want to know.

13

not the practice in the Western District of Louisiana. Debtors' counsel are encouraged to cover the representation issue in their engagement letters. However, the distinction is often misunderstood, and/or debtors wait until the date of the preliminary conference to obtain counsel, or occasionally appear pro se at such conferences, and obtain counsel thereafter. It is submitted that this practice falls well within a court's discretion to control its docket.

The most bizarre testimony from Mr. Loftin concerns an alleged conversation he had at the Lotus Club, a downtown Monroe, Louisiana, private club, to which the above-signed is not a member.[6] On that occasion, with Mr. David McMillin present, Mr. Loftin supposedly made a comment to me about "bottom feeders in bankruptcy." (Mr. McMillin testified he was present and "cringed" when Mr. Loftin made the remark.) Mr. Loftin suggests this remark may have offended the Court. This expression is scarcely new to the Court. The term has found its way into the case law. *In re White*, 2007 WL 4333279 (Bankr. N.D. Texas 2007); *In re Vescio*, 220 B.R.195 (Bankr.D.Vt. 4/16/1998). The Court has absolutely no recollection of Mr. Loftin making such a remark. This Court rarely attends social events in Monroe. It occasionally lunches at the Lotus Club with a member, but insists on reimbursing the member the cost. In his deposition, Mr. Loftin says this was a meeting of Monroe practitioners regarding the rules. This Court has no recollection of

---

[6]Equally bizarre was his deposition testimony regarding his perception that the above-signed wanted to be a member of the Lotus Club, a notion that was unsupported by any evidence and completely lacking in factual basis, as the above-signed is not a member of the Monroe community, lives over two hours away, and has never applied to any organization in Monroe for membership. This Court makes every effort to avoid ex parte contacts with litigants and their counsel. I have rarely attended social events to which members of the bankruptcy bar were often invited hosted by former counsel to Friendly, the late Louis D. Smith, who retired a number of years ago, and at least one party hosted by Mr. Kenneth Campbell, also a retired member of the bankruptcy bar. Mr. McMillin testified at the hearing that he never sees me anywhere.

14

attending or being invited to such a meeting.[7]  In the final analysis, more than twenty one years on this bench has thickened my skin to such labels in or out of the courtroom.

The deposition of Mr. E. Orum Young was introduced in lieu of his testimony, pursuant to a motion and order.  Mr. Young testified he was personally offended by the choice of rooms for the pre-trial conference, evidently thinking it reflected on this plaintiff, in that the conference was held in the conference room at the rear of the courtroom, rather than the antechamber at the front of the building, close to the bench. This Court does not select the venue for its pre-trial conferences (or indeed the courtroom) on the basis of its likes or dislikes for parties or their counsel.  It in fact must use the facilities that are available for the dates in question.  At times, it has held court in the §341 room and pre-trial conferences in the small antechamber in the basement.   The conference room/library on the third floor actually belongs to the United States Magistrate Judge for the Monroe Division. Although this Court has used the room for pre-trial conferences and other purposes, when the Magistrate Judge is using the room, we must go elsewhere.

Mr. Young also testified at his deposition that what he perceives as antagonism toward Mr. Loftin and his clients has come to extend toward him, therefore he indicates he keeps himself out of that (evidently referring to my) courtroom for that reason.  Nonetheless, this Court has conducted literally hundreds of hearings in contested matters and adversary proceedings involving Mr. Young's clients, represented by either Mr. Young or his partner, Ms. Dunlop.  Mr. Young testified that I threatened to "get rid of Mr. Rountree" like I did Mr. McMillin at the pre-trial conference.  Instead,

---

[7]In his deposition, Mr. Loftin accuses me of failing to shake his hand at an LSU Seminar a number of years ago, overemphasizes my reluctance to ride down the elevator with him and Mr. Rountree following the hearing on the motion to disqualify, and apparently takes exception to these imagined "slights."  These accusations are denied, and scarcely enter the Court's thought process, much less do they even rise to the level of grounds for recusal.

my recollection is that I cautioned Mr. Rountree about the combination of the §523 and §727 actions, which he now admits was a tactical error, supported by good law. The Court acknowledges referring to an incident in another pre-trial conference when a member of the bankruptcy bar suggested to Mr. McMillin that the latter had prostituted himself to Mr. Loftin; but I deny calling Mr. Rountree a "whore" for John Loftin. I admit that the choice of terms used in the admonition may have been ill mannered.

Turning next to the testimony of Mr. McMillin, he testified that after he undertook the representation of Mr. Loftin and his affiliates, problems developed in connection with his representation of other clients, and that there is a general view in the bankruptcy community that this Court is a hostile environment for Friendly Finance and Mr. Loftin. He counseled Loftin against representing himself, suggesting that sanctions might be imposed. He testified that my impartiality might reasonably be questioned is a view that is shared by others. When questioned on direct examination about this Court's supposed aversion to summary judgments, Mr. McMillin testified that he never had a case involving Friendly where he felt such a motion was appropriate. Mr. McMillin testified he recalled the Lotus Club incident as "just a regular lunch" but that it had significance as he looked back at the event.

Two other witnesses were called, presumably to support the view that my courtroom is a hostile environment for Mr. Loftin and Friendly. Their testimony as outlined in the post-hearing brief filed by Mr. Rountree is grossly distorted. (Brief on Disqualification, Doc. # 80.) Mr. Ed Theus, a practicing attorney for 36 years, testified that Friendly had an estranged relationship with the bankruptcy court beginning with Judge Leroy Smallenberger, who was appointed a Referee in Bankruptcy in the 1950's, and retired as a bankruptcy judge in 1986, to be succeeded by the

16

Honorable Chief Bankruptcy Judge Stephen V. Callaway.  Mr. Theus testified that Mr. Loftin and Judge Smallenberger did not "play well together," and understood that neither Friendly nor Loftin are "popular" with this judge.  Mr. Theus was asked to represent Mr. Loftin and Friendly but he declined, based on his knowledge that Mr. Loftin is strong-willed and not willing to take advice. Since Mr. Theus opined that he and Mr. McMillin had similar styles, he feared he would fare no better, although he personally had never observed any animosity displayed by me toward Loftin or Friendly in the courtroom.

Ms. Ashley Burch testified that she had practiced law in Monroe for 11 years.  Her former firm had been consulted about representing Mr. Loftin and Friendly and declined.  She discussed the proposed representation with a former partner, and concluded that such representation would be problematic based on both the client and the court, but more the former than the latter. She echoed Mr. Theus' sentiment that Mr. Loftin was a stubborn man, not likely to take legal advice. She testified that she has filed literally hundreds of complaints under either §523 or §727 (but using a different procedural path than the one followed by Mr. Loftin.

Attached hereto is a Table prepared by this Court summarizing the results in matters assigned to this judge in the Monroe Division. All of the matters are adversary proceedings, except *Tucker*, *supra*.  This chart demonstrates that Friendly prevailed in 37 matters. Friendly did not prevail in 30 matters, listed as rulings against, however, some of those include dismissals on motion of counsel to Friendly. One appeal was filed by a defendant. In every appeal by Friendly, the holdings of this Court were affirmed, including the few impositions of sanctions. This Court's oral reasons denying the Motion to Disqualify discuss some of these cases in more details, particularly those where sanctions were imposed.

17

**Analysis**

Friendly is not entitled to a judge of its own choosing, and may not manipulate its forum shopping efforts by putting the Court on the defense. In its post-hearing brief, Friendly cites *Liljeberg v. Health Services Acquisition Costs*, 486 U.S. 847 (Supreme Court 1988) and *Liteky v. United States*, 510 U.S. 548 (1994), cited previously as disfavoring the relief requested. The facts of Liljeberg are clearly distinguishable. There, the judge in question failed to recuse himself from a case involving Loyola University in New Orleans, when he sat on a board of that institution. There is no showing that this court owns any financial interest in Friendly Finance.

In *Liteky*, the issues primarily concerned an "extra-judicial" source. The Court observed:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921)**,** a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

(*In re Lietke*, 510 U.S. 540, 555-56, 114 S.Ct. 1147 (1994)).

As these reasons demonstrate, Friendly has offered no evidence of any extra-judicial source of bias, and the Table attached indicates that Friendly has, in fact, prevailed in a majority of the

18

cases this Court has heard.  Historically, it has been the practice of this Court to conduct itself in such a fashion as to prevent *ex parte* contacts and to avoid situations where its impartiality might be compromised.  Even the testimony of the plaintiff's witnesses, two respected members of the Monroe bankruptcy bar community, confirm that this Court is not the problem here.

### Conclusion

The Motion to Disqualify is Denied. A separate and conforming order will be entered.

### # #

# ROUNTREE LAW OFFICES

(A Professional Law Corporation)
400 Hudson Lane
Monroe, Louisiana 71201

**James A. Rountree**          Telephone 318-398-2737          **Sharon E. Anderson**
Attorney at Law               Facsimile 318-398-2738          Legal Assistant
jim@jrountree.com                                             sharon@jrountree.com

## FAX COVER SHEET

TO: _Jennifer_

COMPANY: _Judge Hunter's Ofc_

FAX NO. _318 443 8195_

The total number of pages being transmitted, including this cover sheet, is ___2___ pages. Should
an error occur during transmission, please call **Sharon Anderson** at the above number.

RE: _FF v. Dorsey # 06-03045_          DATE: _11/27/06_

HARD COPY WILL _____ WILL NOT _X_ FOLLOW BY U.S. MAIL _unless requested_

MESSAGE: _____

_letter re resolution -_

_C: Mr. John L Loftin  325-0460_

_C: Mr. Orum Young   388 1294_

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION
THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE
INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS VIA THE U. S. POSTAL SERVICE. THANK YOU.

# ROUNTREE LAW OFFICES

(A Professional Law Corporation)
400 Hudson Lane
Monroe, Louisiana 71201-5504

**James A. Rountree**
Attorney at Law
jim@jrountree.com

Telephone 318-398-2737
Facsimile 318-398-2738

**Sharon E. Anderson**
Legal Assistant
sharon@jrountree.com

November 27, 2006

Office of Judge Hunter
Attn: Jennifer
300 Jackson St., Ste. 201
Alexandria  LA 71301-8357

RE:   Friendly Finance Service - Eastgate, Inc.
      vs. no. 06-03045
      Gregory Neal Dorsey

Dear Jennifer:

The case is resolved, but not on the basis of the merits. When I asked about the motorcycle that was given as collateral, I discovered that no effort had been made to recover it. This line of inquiry led to discussions between Orum Young and me and a decision to reaffirm a portion of the debt.

I will be filing a motion to dismiss the adversary proceeding.

With best regards, I am

Yours very truly,

James A. Rountree

JAR:sea

c: Ms. Orum Young
   Mr. John Loftin

## SUMMARY OF DISPOSITIONS OF FRIENDLY FINANCE & AFFILIATE(S) MATTERS ASSIGNED TO JUDGE HENLEY A. HUNTER
### UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF LOUISIANA[1]

| Date | Rulings in favor | Rulings Against |
|---|---|---|
| 11/23/93 | | FF v. Walker, AP #93-3013. Plaintiff's complaint dismissed as untimely filed. |
| 7/6/95 | Watson AP #95-3014 Consent Judgment in favor of the parties and the trustee with debtors' assumption of non-dischargeable obligations. | |
| 7/25/95 | Johnson AP 95-8015 Debtors assumed non-dischargeable obligations. | |
| 1/30/96 | Jones AP 95-3026. Consent Judgment. | |
| 6/19/96 | Bowman AP 95-3018 Consent Judgment | |
| 6/24/96 | Terrell AP 96-3018 Consent Judgment | |
| 11/4/96 | Ticheli AP 96-3025 Consent Judgment | |
| 11/5/96 | Matthews AP 96-3032 Consent Judgment | |
| 1/29/97 | | Malta AP 95-3038 Malta. Dismissed by Court following briefing. Judgment of Dismissal affirmed on appeal. |
| 2/24/97 | | Bowman AP 96-3016 Dismissed on Joint Motion following Order to Show Cause. |

| | | |
|---|---|---|
| 3/25/97 | Wheeler AP 97-3005 Consent Judgment | |
| 5/15/97 | Gullette AP 97-3006 Consent Judgment | |
| 6/30/97 | Parker AP 97-3012 Consent Judgment | |
| 8/20/97 | Scheitel AP 97-3016 Consent Judgment | |
| 1/7/1998 | Bradshaw AP 97-3013 Consent Judgment | |
| 7/23/98 | | Tucker Case No. 97-32267. Loftin and Friendly enjoined from initiating contact with debtors for one year and from attending any creditors' meeting; clerk's office may refuse to file any agreement to reaffirm not signed by counsel for Friendly other than Loftin. Affirmed by District Court on appeal 9/1/99.[2] |
| 9/2/98 | Golden AP 98-3017 Default judgment granted after evidentiary hearing. | |
| 9/11/98 | Hale AP 97-3054 Consent Judgment | |
| 3/8/99 | Skipper AP 99-3002 Consent Judgment | |
| 6/7/1999 | Woolsey AP 98-3028 Consent Judgment | |
| 6/7/1999 | Dupree AP 98-3032 Consent Judgment | |
| 6/7/1999 | Williams AP 98-3033 Consent Judgment | |

2

| | | |
|---|---|---|
| 8/18/1999 | Hall AP 98-3037 Judgment for FF denying discharge, affirmed on appeal. | |
| 9/27/1999 | Sant AP 99-3015 Default Judgment. | |
| 10/4/1999 | McDaniel AP 98-3036 Consent Judgment | |
| 10/4/1999 | Ryder AP 99-3003 Consent Judgment | |
| 10/4/1999 | Hozelm AP 99-3020 Consent Judgment | |
| 1/10/2000 | Haire AP 99-3034 Consent Judgment | |
| 2/2/2000 | Culbreath AP 99-3035 Default Judgment following evidentiary hearing | |
| 5/2/2000 | Andrews AP 00-3012 Consent Judgment | |
| 8/10/2000 | Hollis AP 00-3022 Consent Judgment | |
| 8/23/2000 | Saulsberry AP 00-3024 Consent Judgment | |
| 10/31/2000 | | Martinez AP 00-3010 Judgment for defendant following trial. |
| 10/31/2000 | | Compton AP 00-3009 Judgment for defendant following trial. |
| 11/28/2000 | | Winn AP 00-3017 Complaint dismissed after trial. |
| 12/4/2000 | | Martin AP 00-3014 Complaint dismissed with prejudice following filing of affidavit by plaintiff no funds paid to plaintiff. |

3

| | | |
|---|---|---|
| 1/3/2001 | | Winn AP 00-3032 FF Mid-City seeks denial of discharge on the alleged false oaths contained in amended schedules allegedly filed post-conversion, in particular the omission of a lawsuit. However, there were no amended schedules, and the only document filed post-conversion was not executed under oath. Counsel for plaintiff chastised for failing to abandon the action. |
| 2/15/01 | | Berry, AP 99-3029.Judgment for defendant on §727 complaint after trial |
| 3/20/01 | | Shamburger AP 00-3033 Dismissed on Motion of Counsel to FF. |
| 4/25/01 | Clark AP 00-3042 Clark. Proposed settlement of combined §523 and §727 complaint was not approved by Court, but judgment was rendered in favor of FF on the §727 complaint after trial. | |
| 5/7/01 | | Robinson AP 99-3036 FF combined §523 and §727 complaint. Efforts to settle not approved. Judgment for defendants after trial. |
| 5/08/01 | | Thaxton AP 00-3008. Dismissed with prejudice after settlement not approved. |

4

| | | |
|---|---|---|
| 5/08/01 | | Fair AP 00-3038. After trial, plaintiff was allowed 10 days to dismiss adversary proceeding with prejudice. Court entered Standing Order on combining §523 and §727 complaints. |
| 3/1/02 | | Shirey AP 00-3048. Judgment for defendants rejecting plaintiff's demands, however defendants required to surrender collateral ( a bow) to FF. Reasons held that if an appeal was filed, judgment be rendered for $900 in damages to FF. No appeal filed. |
| 5/9/02 | | Strong. AP 02-3021 Dismissed for lack of prosecution. |
| 5/15/02 | Watson AP 01-3014 Judgment for the plaintiff requiring payments to Chapter 7 Trustee. Failing to do so, her discharge would be denied. | |
| 10/28/02 | Hazlinski AP 01-3016. Judgment for FF on complaint for misappropriation of funds and missing vehicle used as collateral. | |
| 11/14/02 | | Spears. AP 01-3015. Compromise anticipated, but complaint dismissed on plaintiff's motion. |
| 12/26/02 | | Wyles AP 02-3059. Complaint dismissed on motion of counsel to FF. |

5

| | | |
|---|---|---|
| 2/7/03 | Moore AP 02-3049 Judgment for Plaintiff. | |
| 5/21/03 | | Young AP 02-3048. Judgment for defendants after trial on alternate dischargeability and non-dischargeability complaints. |
| 6/4/03 | | Beaudoin AP 02-3047. Dismissed on motion of counsel to FF. |
| 11/05/03 | Underwood AP 03-3018 Judgment for plaintiff FF after trial. | |
| 3/15/04 | | Sampson AP 03-3031 Judgment for defendants after trial and on defense motion to dismiss. |
| 6/7/04 | | January AP 03-3049 Dismissed on motion of defendants. |
| 10/12/04 | | 03-3041 Kelley Judgment for defendants. |
| 12/29/04 | Robinson AP 04-3026 Judgment for plaintiff FF on lost vehicles as collateral. | |
| 2/14/05 | | South AP 04-3021. Complaint filed in a Chapter 13 case. When case was dismissed with a 109(g) finding, adversary was dismissed. |
| 3/4/05 | | Burnett AP 04-3063. Dismissed after order to show cause for no grounds for relief under 11 USC §523(6) for conduct post-petition. |

6

| | | |
|---|---|---|
| 6/2/05 | Johnson. AP 04-3029. Judgment for FF after trial. | |
| 8/9/05 | | Brown. AP 04-3063.Dismissed on joint motion for plaintiff and defendant. |
| 9/8/05 | | Williams AP 05-3040 Complaint dismissed after Order to Show Cause, Mr. McMillin sanctioned, affirmed on appeal. |
| 1/31/06 | Fletcher AP 05-3019. Consent Judgment entered in favor of FF. | |
| 5/3/06 | | Humble AP 05-3001. Judgment for defendants after trial. |
| 12/7/06 | | Dorsey AP 06-3045. Judgment for defendants. On remand following appeal. |
| 12/27/06 | McPhail AP 04-3054. Consent Judgment directing payments to the Chapter 7 Trustee. On completion of payments, the discharge issuance date may be refixed. The Chapter 7 Trustee has filed his report of distribution. | |
| 6/29/07 | | Porter. AP 07-3013. Voluntarily dismissed by FF after notice. |

1. All of these matters are Adversary Proceedings with the exception of Tucker, see endnote 2.

2.This is a ruling on a bankruptcy case.